CASE 19—PETITIONS ORDINARY—MARCH 9.

97 103
109 736

# Shields, &c v. Louisville & Nashville R. Co.

# Shields by, &c v. Louisville & Nashville R. Co.

### APPEALS FROM SPENCER CIRCUIT COURT.

1. A PUBLIC NUISANCE IS NOT THE SUBJECT OF A SUIT BY A PRIVATE INDIVIDUAL unless he has sustained some special injury thereby. Therefore the unreasonable obstruction of a highway by a railroad train, being a public nuisance, does not give a right of action to a traveler on the highway who has been delayed by the obstruction, unless accompanied by some special damage.

2. OBSTRUCTION OF HIGHWAY BY RAILROAD TRAIN—PROXIMATE CAUSE.—Plaintiffs, mother and daughter, having been delayed by a train of cars across a highway upon which they were driving, the fact that while thus delayed they were frightened by the disorderly conduct of passengers who had left the train and gone upon the highway, does not make the railroad company liable, as the obstruction of the highway was not the proximate cause of the injury, and the company had no power to prevent the disorder. Nor was the obstruction the proximate cause of an injury to one of plaintiffs resulting from her jumping from her buggy, although she claims that the danger of the buggy turning over, to avoid which she jumped, was caused by the darkness coming upon her in consequence of the delay. And no other special damage being claimed a peremptory instruction for defendant was proper.

G. G. GILBERT FOR APPELLANTS

1. The obstruction of the highway was a public nuisance for which the railroad company is subject to indictment. (L. & N. R. Co. v. Commonwealth, 13 Bush, 388; Tennessee R. Co. v. Adams, 3 Head (Tenn.), 596; Pennsylvania R. Co. v. Angel, 38 N. Y., 58.)

2. Mixed nuisances are such as are both public and private in their effect. Of this class are obstructions placed in a highway which produce a special injury to one person by injuring his horse, carriage or himself, while others of the public are only hindered, inconvenienced and delayed. (6 Lawson's Rights, Remedies, &c.,

sec. 2959 and cases cited; Wood on Nuisances, p. 736 and cases cited.)

3. The plaintiffs suffered such special damage as entitles them to recover. (Corley, &c., v. Lancaster, 5 Ky. Law Rep., 40; Corley, &c., v. Owensboro, &c., R. Co., 10 Bush, 288; Allen v. Olmond, 8 East., 4; Story v. Hammond, 4 Ohio, 374; Williams' Case 5, Rep., 72; Ross v. Miles, 4 Maule. & Sel., 101; Greosley v. Codling, 2 Bing. Rep., 263; Lansing v. Wiswall, 5 Denio., 213; Wilkes v. Hungerford Market Co., 2 Bing., 281; Quincy Canal Co. v. Newcomb, 7 Met. (Mass.), 276; Hughes v. Heiser. 1 Binney, 463; Gates v. Blincoe, &c., 2 Dana, 158; Stone v. Fairbury, &c., R. Co., 68 Ill., 394; Grand Rapids Co. v. Heisel, 38 Mich., 62; Tenery v. Cen. Pac. Ry. Co., 51 Cal., 194; Chicago, &c., Ry. Co. v. Ayers, 106 Ill., 511; Brewer v. Boston, &c., R. Co., 113 Mass., 52; Patterson v. Detroit Ry. Co., 19 Am. and Eng. R. Cases, 415; Murray v. South Carolina R. Co., Rich. (Law), 227.)

4. Plaintiffs are entitled to recover for the fright, for the nervous prostration, for the insulting language heard, &c. (Meagher v. Driscoll, 99 Mass., 281; Detroit Post Co. v. McArthur, 16 Mich., 447; Hawes v. Knowles, 114 Mass., 518.)

5. It is the duty of servants in charge of a railroad train to preserve order, and to protect passengers from the drunken and insulting conduct of others. (Adams v. L. & N. R. Co., 10 Ky. Law Rep., 78; L. & N. R. Co. v. Logan, 10 Ky. L. R., 798.)

And this obligation does not cease the moment the train stops at a railroad crossing.

6. The circumstances of indignity attending the wrong should be considered. (L. & N. R. Co. v. Wilsey, 11 Ky. Law Rep., 420; Tyson v. Booth, 100 Mass., 258; L. & N. R. Co. v. Ballard, 10 Ky. Law Rep., 735; L. & N. R. Co. v. Welsh, 13 Ky. Law Rep., 733; City Transfer Co. v. Robinson, 12 Ky. Law Rep., 555; L. & N. R. Co. v. Grundy, &c., 12 Ky. Law Rep., 293; Pierce on Railroads, 302; 71 Ill., 391; 36 Iowa, 462; 13 Cal., 599; 44 Iowa, 314; 43 Ill., 364; 53 N. Y., 25; 27 Conn., 293; 36 Wis., 658.)

7. The injury sustained from driving home after night is not too remote. (King v. Shanks, 12 B. M., 420; Munford v. Taylor, 2 Met., 600; L. & N. R. Co. v. Wade, 11 Ky. Law Rep., 904; Harrison, v. Beckley, 12 B. Mon.; Paducah Lumber Co. v. Paducah Water Co., 11 Ky. Law Rep., 742; s. c. 89 Ky., 340.)

ASHTON P. HARCOURT AND EDWARD W. HINES FOR APPELLEE.

1. If the act of defendant in obstructing the highway was wrongful, it constituted a public nuisance and no individual can maintain a private action for damages on account of it, unless he alleges

Shields, &c v. Louisville & Nashville R. Co.

and proves special damage to himself distinct from that suffered by the public. (Seifried v. Hays, 81 Ky., 380; 1 Sutherland on Damages, p. 766.)

2. Mere delay caused by an obstruction is not such special damage as gives a right of action. (Elliott on Roads and Streets, p. 501; 16 Am. & Eng. Enc. of Law, p, 976; Wood on Nuisances, sec. 674; Barr &c., v. Stevens, &c., 1 Bibb, 293; Hirsch v. Wachter, 34 Md., 265; Crook v. Pitcher, 61 Md., 515; San Jose Ranch Co. v. Brooks, 74 Cal., 463; Steamboat Co. v. Railroad, 30 S. C., 539; s. c. 14 Am. St. Rep., 924.)

3. The fright suffered by plaintiff by reason of the disorderly conduct of persons on the highway was not the *proximate* consequence of the obstruction which caused the delay. (Dubuque, &c., Asso. v. Dubuque, 30 Iowa, 176; Sutherland on Damages, vol. 1, p. 49; Sellock v. Lake Shore, &c., R. Co., 58 Mich., 195; Lewis v. Flint. &c., R. Co., 54 Mich., 55; Pittsburg, &c., R. Co. v. Staley, 41 Ohio St., 118.)

4. Even if the fright was the proximate consequence of the obstruction, still the damage was consequential and not direct, and for such damage resulting from a public nuisance there can be no recovery. (Paine v. Patrick, 3 Wood, 289; Steamboat Co. v. Railroad Co. (So. Car.), 14 Am. St. Rep., 925; Barr v. Stevens, 1 Bibb, 293.)

5. The mere fear of injury is not such special damage as will authorize a recovery where special damages must be pleaded. (3 Sutherland on Damages, p. 664.)

Chapman v. Western Union Tel. Co., 90 Ky., 265, distinguished.

JUDGE GRACE DELIVERED THE OPINION OF THE COURT.

These two suits, by mother and infant daughter, arise upon the same state of fact, grow out of the same transaction, and involve the same issues, were heard together in the court below, and may be considered together by this court.

Mrs. Nannie Shields and her daughter Mamie, residents of Spencer county, had on Sunday, the 9th day of July, 1893, been visiting some relatives, and when returning home on that day along a public turnpike road, and not very long before sundown, approached a crossing of the Louisville & Nashville railroad and this turnpike road, at Wakefield, where they found the turnpike obstructed by the passenger

coaches of defendant corporation, which it seems on this day was running an excursion train for the colored people of Louisville down to Bloomfield, south of the point indicated, and that on returning to Louisville they found a southbound passenger train late, and had side tracked the excursion train to allow the passenger train to go by on the regular track, and it appears from the evidence that in this way these plaintiffs were delayed some thirty minutes, possibly more, by reason of this obstruction. That plaintiff, Mrs. Shields, saw no conductor nor any of the servants of appellee near by. That being so delayed, many of the negro passengers on the excursion train got off same and were wandering about near the station up and down the track and up and down the turnpike where the plaintiff was delayed, cursing, swearing, using obscene, vulgar language, fighting, throwing rocks, one of which came near her and her little daughter in her buggy, a pistol being fired off in the melee, and all this to the terror and alarm and annoyance and insult of herself and little girl.

That after being delayed for quite a while in this way, and under these circumstances for between half an hour and an hour, and just as the sun was setting or a little after, and when the trains passed and this excursion train pulled out off the turnpike, that then plaintiffs proceeding on their way home found a nearer way barred by a locked gate, and being then compelled to go around a greater distance, some two and a half miles to their home, darkness came on them, and the road being rough she became alarmed at the danger of turning over, and jumping from her buggy (the mother) injured her knee, and that then and since the trial it had been inflamed, swollen, and had greatly pained her, and was to some extent stiffened, that by reason of the alarm and fright from the conduct of the negroes at the sta-

tion  both she and her little daughter had been made nerv-
ous and suffered greatly, the little girl  not being able to
sleep soundly for some nights.   And all this plaintiffs say
was by reason of the negligence and wrongful acts of the
defendant in obstructing said public passway, and in suffer-
ing and permitting the drunken, vicious negroes to go at
large on and near its roadway and on and near the turnpike.
where she was detained.   And all to the great damage of
both plaintiff and her little daughter.   Wherefore in ap-
propriate separate suits they claim damages.

Defendant after demurring filed its answer, denying that.
by gross negligence it obstructed the turnpike; denied that
it wholly obstructed it at all; denied that its officers aban-
doned the train or the control or management of same; deni-
ed that it had any knowledge of the misconduct of the negro
passengers as complained of by plaintiff in any particular; in
a second  paragraph  charging  that  plaintiffs  by their
own negligence contributed to any injury  they may have
sustained; and in a third paragraph charging that this de-
lay and obstruction of the turnpike were rendered necessary
by the approach of the south-bound passenger train, and that
this was the only place in that vicinity where they could side
track their train, and allow the other to pass, and that all
this was well known to plaintiff; that they only stopped on
the turnpike a short time and for this purpose.   Of course
defendant denies liability.

A jury having heard the evidence of plaintiff sustaining
substantially her petition, the court on motion of defendant
gave a peremptory instruction to find for defendant.  Excep-
tions were taken by plaintiff, motion for new trial overruled,
and appeal filed.

Defendant corporation by its attorneys in their brief  con-
tends that if it did obstruct the turnpike road and travel

·on same that it was a public nuisance, and for which it is subject to indictment, but that the private citizen unless he has sustained special damage other than mere detention can not sue; that any injury he sustained by delay only, being common to all travelers, will not support an action.

And again it says, any possible damage or injury by reason of the misconduct of any of its passengers, while off its train, if such there was, was beyond its control, beyond its authority or duty or power to restrain or prevent. Neither was same or any damage to plaintiffs or either of them the necessary or natural result of such delay or obstruction; or in other words that any negligence of the railroad company in obstructing the turnpike was not the proximate cause of the injury to plaintiff, but that the misconduct of its passengers towards plaintiff caused said injury. Neither was the negligence of defendant the proximate cause of plaintiff, Mrs. Shields', injury on her way home.

Defendant cites numerous authorities along this line, and in support of its contention an early case in Kentucky, being Barr & Yeiser v. Stevens, 1 Bibb, 293, in which the court says: "Upon general principles that common interest which belongs equally to all, and in which the parties suing have no special or particular property, will not maintain a suit. Thus a public nuisance is not the subject of a suit by a private individual unless he has sustained some special injury thereby. As if a man fell trees in a highway whereby it is stopped up to the annoyance of the passengers, it is a nuisance common to all, a public nuisance, for which at common law he might be prosecuted by the Commonwealth and punished, but a suit against him could not be maintained by a private individual who had only sustained the injury common to all of being turned out of the way, but that if in attempting to ride over the trees felled in the road an individ-

ual's horse should be thrown whereby himself or his horse is wounded, he can maintain an action for this special damage. The reason why he can not without special damage maintain his suit for the nuisance against the wrongdoer is, that if one could sue, all might, and this would be ruinous."

This doctrine, thus clearly and early announced, seems to have been kept steadily in view in Kentucky, and the following case may be cited in support or recognition of same: Seifried v. Hays, 81 Ky., 380, a slaughter-house case, in which damages were allowed only to those showing special damage.

Sutherland on Damages, Vol. 1, page 766, maintains the same general principle.

Elliott on Roads and Streets, page 501, says mere delay caused by an obstruction, unaccompanied by any special damage or injury, does not as a rule give any right to an action for special damage.

And in 16 American and English Encyclopedia of Law, page 976, it is said that for mere delay in a journey, or from being compelled to take a circuitous route, by reason of an obstruction in a river or a road, it would seem from the weight of authority that a cause of action does not arise.

Wood on Nuisances, sec. 674, is cited to the same effect.

On the other question, as to whether any injury to the feelings or by reason of any alarm or fear excited in either of the plaintiffs by reason of the misconduct of the negro passengers, was so connected with any negligence in defendant in obstructing the turnpike way, as that it may be fairly said to be the proximate cause of same and so to hold defendant liable, we find the general doctrine on this subject announced (16 American and English Encyclopedia of Law, page 428), to be that "it is a maxim that the law looks at the proximate and not at the remote cause of an

injury, and that out of the application of this maxim grows the liability or nonliability of a defendant charged with the infliction of an injury by his negligence, and unless the alleged negligence of the defendant was the proximate cause of the injury of which plaintiff complains there can be no recovery. For consequences of which his act or omission was only a mere condition or remote cause, the defendant is not liable." The same work also recites, page 431, that there is no fixed, unbending rule that in every case will clearly distinguish proximate and remote causes, and discriminate between active, efficient causes and apparent causes that are merely conditions and not causes of the injuries that follow. That "it follows that, to constitute actionable negligence, there must be not only a causal connection between the negligence complained of and the injury suffered, but the connection must be by a *natural and unbroken sequence*—without intervening efficient causes—so that but for the negligence of the defendant the injury would not have occurred;" that "it must not only be *a* cause but the *proximate*, that is, the direct and immediate efficient cause of the injury."

In Louisiana Mut. Ins. Co. v. Tweed, 7 Wall. (74 U. S. ), 44, Justice Miller said: "We have cited to us a general review of the doctrine of the proximate and remote causes as it has arisen and been decided in the courts in a great variety of cases. It would be an unprofitable labor to enter into an examination of these cases. If we could deduce from them the best possible expression of the rule it would remain after all, to decide each case largely upon the special facts belonging to it, and often upon the very nicest discriminations." So that after all we can but return to the facts of this case, and say whether any negligence of the defendant in obstructing this passway at the time and place was the proximate cause of any alarm, fright

or injury arising or growing out of the misconduct of the passengers on said railway train at the time.

This obstructing train was but a thing, an inanimate thing, a physical fact or force, or power, barring the passing of plaintiff. It was not a person, not a thing of life. The injury of which plaintiff complains was committed by persons, free moral agents, sentient beings, yet drunk as charged, and offending the moral feelings of plaintiff by blasphemy and card playing, and affrighting her by fighting, throwing rocks, and firing pistols. How can it be said that the railway train was doing any or either of these things? It is not claimed that defendant's agents were employed in or participating in these wrongful acts.

It should further be considered that these officers of the railway train were not civil officers; they had no right or power to arrest or imprison, or determine the guilt or innocence of any particular individual, nor to inflict punishment on the guilty if identified. Why then should it be said that they did themselves the things complained of, or that they suffered and permitted them to be done to the injury of the plaintiffs, or so as to hold the railway company liable to plaintiffs for any damages sustained thereby?

We recognize the fact that in certain limited cases these railway officers have a certain limited power or authority in the protection of the property of their employers, and in protecting from injury, violence or annoyance, the passengers on their trains, under their immediate custody and control, but beyond this we know of no such authority or power. If plaintiff's moral sensibilities were outraged, or if she was put in fear by the wrongful acts of others, her remedy is against those who injured her and not against the railway company. As to the injury sustained by plaintiff, Mrs. Shields, by jumping out of her buggy, this is still further

removed from any possible connection with the negligence of defendant in obstructing the passway.

This negligence was not the proximate cause of either injury complained of.

This was doubtless the view taken by the judge below in dismissing the petitions of plaintiffs.

The judgment is affirmed.