## EMANUEL ANDERSON v. ALABAMA & VICKSBURG RAILROAD COMPANY.

RAILROADS.    *Obstructing highway.*    *Code* 1892.    § 3551.

> A plaintiff, to recover damages of a railroad company, because of
> the obstruction of travel by a train standing across a highway,
> under Code 1892, § 3551, making it the duty of a railroad company
> upon stopping any train where its track crosses a highway to so
> uncouple its cars as not to obstruct travel on the highway for a
> longer period than five minutes, must show :
>
> (a) That the road obstructed was a highway, a public road ;
> (b) That plaintiff himself was detained by the train for more than
>     five minutes ; and,
> (c) To recover damages to health, that the detention caused the ill
>     health of which complaint is made.

FROM the circuit court of Warren county.

HON. JAMES H. NEVILLE, Judge.

Anderson, appellant, was plaintiff in the court below.    The
railway company, appellee, was defendant there.    From a
judgment in favor of defendant plaintiff appealed to the
supreme court.    The facts are sufficiently stated in the opinion
of the court.

*S. N. Collier* and *W. E. Mollison*, for appellant.

It is manifest that the verdict was contrary to law and the

evidence, and that the motion for a new trial should have been sustained. Section 3551, code of 1892, makes it a misdemeanor for a railroad company, upon stopping any train at a place where such railroad crosses a highway, to obstruct travel along such highway for a longer period than five minutes; and where one's travel along the highway is obstructed by a violation of this statute a civil action will lie. *Railroad Co.* v. *Durfree,* 69 Miss., 439. It is admitted that one of the appellee's trains failed to uncouple, and obstructed the highway for from fifteen to twenty minutes. It is admitted that appellant's travel along the highway was obstructed for five minutes. There is no dispute as to the damage appellant received. What, then, is appellee's defense? Is it that the obstruction of appellant's travel was not the proximate cause of his injuries? We have, at least, appellee's admission that by its wrongful act appellant was deprived of five minutes of his time while traveling along the highway, and is not time valuable to a man? Is it not especially valuable to a man who, in feeble health, is traveling homeward about 8 o'clock in the cool nights of October? We cannot say with absolute certainty that appellant would not have been sick but for appellee's wrongful act; we cannot say that he would have reached home before the rain began, but we can say, with positive assurance, that but for appellee's act he would not have been kept out in the cold night air as long as he was; he would not have been kept out in the rain as long as he was, if at all; he would not have suffered as much, because he would have reached the comforts of home sooner—and are not pain and mental anguish subjects for damages? In all reason we may say that he would not have been as sick as he was and the expenses incurred from his sickness would have been less. But independent of this view of the case appellant was entitled to a judgment. Appellant had a legal right to a free and unobstructed travel along the highway. *Kinnare* v. *Gregory,* 55 Miss., 612. This right was violated by the wrongful act of appellee, and for every

wrongful violation of a right the law presumes some damages. *Rose* v. *Railway Co.*, 70 Miss., 725; Watson on Dam. for Per. Inj., 9, sufficient, at least, to carry the costs.

*Mc Willie & Thompson*, for appellee.

This was a suit brought by the appellant against the appellee for damages resulting to the plaintiff from the obstruction by the railway company of a highway crossing. The jury found for the defendant, and certainly the finding was not predicated of any erroneous instruction given in behalf of the appellee. It appears from the evidence that a freight train obstructed a crossing at Newman's Grove, and there is testimony to support the verdict, on the idea that the plaintiff was not delayed exceeding five minutes; but the most remarkable thing about the case is that there is not a scintilla of evidence to show whether the road which crossed the railway track was or was not a public road or highway.

The general rule is that the railway company has the right to occupy its tracks. The exception is found in § 3551 of the code, which provides that the railway company shall not obstruct travel upon a highway for a longer period than five minutes. An essential part of the proof to recover of a railway company in cases like the one at bar is evidence to the effect that the road crossing which was obstructed was a highway crossing. The character of the road must be shown in evidence, and it must be shown to be a highway—that is, a public road in the country. The court will recollect that street crossings are especially provided for in the same section of the code. The words "public road" is not used, nor is the word "highway" used, by any witness. The witnesses speak of the road which crosses the railway at Newman's Grove, but none of them negative the idea of its being a private road. Manifestly, therefore, the plaintiff failed to make out his case, and the verdict in favor of the defendant will have to be affirmed.

But again, there was testimony for the defendant showing that the plaintiff was not obstructed in his passage over the railway track exceeding five minutes. The jury had a right to believe the witness who testified that plaintiff was not detained exceeding five minutes, and to predicate their verdict on his testimony, disregarding all the other testimony in the case, if they saw proper. The statute provides that the railway company shall not obstruct travel for a longer period than five minutes. This means, shall not obstruct the plaintiff for more than five minutes. If a train were stopped on a highway for an hour, when no person desired to pass, the railroad company would not be obstructing travel during the hour. To obstruct travel means to obstruct a traveler, and when a plaintiff sues, basing his right on the statute, he will have to show that his passage across the railway track was obstructed more than five minutes.

CALHOON, J., delivered the opinion of the court.

This is an action on an account, not dated, but filed October 18, 1900, against the railway company, "by reason of the closing of the public road across the railroad, $200," on which the justice of the peace gave the plaintiff, Anderson, judgment by default for $200, but on appeal there were verdict and judgment for defendant. There is no evidence in the record that the road obstructed was a highway. The plaintiff certainly has no just cause of complaint of the action of the court on the instructions. He, for himself, testified that he was in failing health, and had been under treatment of Dr. Cook about a week before, and that he was on horseback, and wanting to cross the railroad track at Newman's Grove on his way home, and that just as he reached the crossing a freight train covered it, and stopped and uncoupled, leaving the road obstructed, and a section of it went back to pull some cars it had left behind up to that section of the train which was left, and that he was detained there from three-quarters of an hour to an hour before the obstruction was removed; that he rode

down to one end of the cars, where he thought he could cross, but was prevented by a wire fence ; that, when he crossed, he found his wagon on the opposite side, gave his boy his horse, and went home in the wagon, his home being from three to three and one-half miles from the crossing ; that he got into the wagon at 9 o'clock, and got home about 12 o'clock, and just before he got home he had a chill, and a hard rain, coming up, wet him; that he was senseless until the next morning, and was "about dead, too ;" and that his illness continued about two months, with pains in his side and breast, being treated by Dr. Cook. He says he did not go to another road, where he could have crossed, because he could not have gone through the weeds, and that because of his illness he lost about three bales of cotton. He says he was a little sick before the detention at the crossing, and was not feeling well when he got there, and that he took from 9 until 12 o'clock to go to his home, three or three and one-half miles distant, and was drawn by mules, and that he had nothing in the wagon, and that the rain came up when he was about a mile from home. His son testified for him that he took him to his home in the wagon ; that when he got to the crossing with the wagon, and on the opposite side from his father, the train was uncoupled, and a part of it over the crossing, and the engine uncoupled from it and went back east ; that the engine came back with part of the train, and coupled up with the obstructing cars, and went on to Vicksburg ; that his father was pretty sick all that night, and that he did not see him until the train pulled out ; that it was four miles from the crossing to his home, and that they got home about 9 or 10 o'clock, having left the crossing about 7 o'clock with good mules, which, however, walked all the way. Dr. Cook testified for plaintiff that he was his physician, but had not done any practicing for him for about two years. He said the plaintiff came to him after the trouble at the crossing, and had a bad cough and severe pain in the chest—his diagnosis being that he had neuralgia—and this was in the

fall of 1900. For the defendant, one Henington testified that
he was there at the crossing when the train got to Newman's,
and that the plaintiff came up afterwards ; that he came up
when the engine came back with the other part of the train,
and that he led his horse to the end of the car, and could have
passed it ; that he was not detained more than five or six
minutes, but told the witness, after he went to the end of the
car and came back, that he intended to wait and sue the rail-
road. This witness explains that there is a steep grade com-
ing up to Newman's, and therefore it was necessary to break the
train and pull it up in sections ; that plaintiff was detained a
very short time—not over five or six minutes. Lem Hening-
ton, for defendant, testified that plaintiff came up to the cross-
ing on horseback just before the second section was pulled up,
and was detained not exceeding five minutes, and that plaintiff
asked him if he would be a witness, and if he could not prose-
cute the railroad company. Another witness, named Hening-
ton, corroborated the other two, and swears that the detention,
as witness thought, was not exceeding five minutes, and is
satisfied that it could not have been as much as six minutes,
and that the plaintiff spoke to him about getting witnesses, and
got his name.

Of course, there is no doubt, under the rulings of our court,
that a plaintiff may recover damages, under some circum-
stances, arising out of detention at a highway, where his health
suffers from that cause, and the detention was beyond the legal
limit allowed to railroad companies. It is none the less the
law that such recovery cannot be had unless the detention ex-
ceeds five minutes, under § 3551 of the code, and, in the case
at bar, only if the damage to health was caused by the delay.
Here the whole case was left to the jury, the evidence was con-
flicting, and the verdict should not be disturbed.

*Affirmed.*