ILLINOIS CENTRAL RAILROAD COMPANY v. ELIZA ENGLE.

[60 South. 1]

1. RAILROADS. *Obstruction of highway. Code 1906, section 4049. Damages. Excessive damages.*

Where a party was kept waiting for forty-five minutes at a highway crossing by reason of its being blockaded by a railroad train in violation of section 4049, Code 1906, she was entitled to recover the damages sustained thereby.

2. SAME.

Where plaintiff, a woman, being ill, was on her way to see a physician and was detained on a public crossing on account of its being

blocked by a railroad train for twelve minutes while going and for forty-two when returning a verdict for one thousand dollars was excessive and should be reduced to five hundred dollars.

APPEAL from the circuit court of Attala county.

HON. G. A. McLEAN, Judge.

Suit by Mrs. Eliza Engle against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes* for appellant.

Now it appears from the testimony of plaintiff that this crossing was blocked about fifty-four minutes in all, going and coming. It must be manifest to the court from the testimony in this record, as it is to us, that the only damage which Mrs. Engle suffered, if any, was from the delay merely. The amount of her recovery in this case exceeded any possible actual damage which she could have suffered and is largely in excess of any sum which ought to be imposed upon the railroad company as a penalty for their neglect in not opening this crossing. There is nothing in the testimony which goes to show that the railroad company knew these people were waiting at the crossing, except the fact that Ben Washington testifies that he spoke to the agent about it. All that Ben says on this point, however, is denied by everybody to whom he claims to have spoken in reference to opening the crossing; and it must not be forgotten that Ben Washington himself has a case pending against the railroad company about this very thing.

There is testimony in the record which goes to show that one of plaintiff's witnesses spoke "to some young fellow" about opening the crossing before it was done; and that this employee, if he was an employee, did not do so immediately, but did open the crossing soon afterward. Why it was not done at once does not appear in the record; but when punitive damages are sought to be recovered, it

is fair to suppose that it took some few minutes of delay in order to acquaint those in control of the train with the fact that the crossing was closed. Ben Washington, the colored man who is suing the railroad company, testified that he went up and saw one of the employees on the train and asked for the crossing to be opened; and as it was not done, went to the depot agent and called his attention to it, and that the agent replied that he would have it done as soon as possible, or something to that effect. The agent testified that no one had spoken to him.

If punitive damages are recoverable in this case, the right must depend largely upon the testimony of Ben Washington, who himself is suing the company for the same cause, and is thus interested in making out the case.

As to whether or not the damages are excessive is largely a matter of discretion with the court, but we beg to submit herewith a few authorities upon this subject.

Before calling the court's attention to the authorities in reference to when it is proper for the court to reduce the amount of recovery on account of excess of damages, we desire to analyze for a moment this judgment.

We think we have shown from the record that Mrs. Engle did not suffer any actual damage, or, if so, it was very slight and immeasurable. We think the record is conclusive as to this.

It cannot be when the train was standing still that there was anything in her exclamation as to stopping the train and holding the horse which showed that the negligence of the railroad company had caused or aggravated this condition. As a matter of fact it was the horse because, when she reached the crossing, the train was standing still both times and the testimony shows that she was driving a very wild horse and this, and this alone, caused the excitement.

These things may have had their influence with the jury, and doubtless did, as also the frail condition of this woman.

Now let's see as to this recovery. The statute allows the crossing to be blocked five minutes. The total time of the income and outgoing trips of Mrs. Engle, after the crossing was blocked, was fifty-four minutes. Taking five minutes that the crossing could be blocked each time that she approached it, making ten minutes in all, going and coming, the railroad crossing was blocked unlawfully, according to the testimony, only forty-four minutes. The recovery is one thousand dollars for this forty-four minutes. This is twenty-four dollars a minute which it cost the railroad company. Analyzing it a little further it is about thirty-five or forty cents a second.

Surely, the imposition of so great a penalty as this, for so slight a negligence on the part of the railroad company, as punitive damages, shows that the jury was influenced by some purpose other than merely to subserve the public good; and this is the only theory upon which punitive damages can be allowed at all.

We say that the amount of the recovery in this case is shockingly gross. It would not be imposed as a fine upon any individual or corporation unless the facts showed some insult. There was nothing of that sort in this case. If anything, it was mere negligence, willful negligence, if you want to call it so from the facts. But in no phase of this cause should this recovery be allowed to stand for this amount.

In the case of *Hardin* v. *Y. & M. R. R. Co.*, 100 Miss. 146, is found a discussion of the object the law has in allowing punitive damages, and the circumstances when proper. It is there declared that "such damage is allowed for the public good, and for the purpose of deterring others from like offences;" and to this may be added, and for the purpose of deterring the same corporation or person from repetition of the offence.

In the above case, and on the page cited, are found a number of authorities from this state, on this subject. Let us concede that an act is willful, but unaccompanied by humiliation and insult. And there must be a difference

in recovery when the act is merely willful, and when it is insulting and humiliating. In this case there was no actual damage, no insult; mere negligence; and surely two hundred dollars, five dollars a minute, is enough punishment to guarantee this good lady, and all the public, that the railroad company will not allow this to happen any more. This accomplishes the purpose of the law, and prevents the company from being compelled to respond to the sympathies of the jury for this frail and delicate woman.

*S. L. Dodds* and *Flowers, Alexander & Whitfield*, for appellee.

It has been settled beyond question in this state that the amount which may be awarded as punitive damages in a proper case is something peculiarly within the province of the jury to fix. There is no measure. The discretion of the jury must determine the amount. As long as that discretion operates alone the finding of the jury is final. Unless prejudice or bias comes in and influences the verict the finding of the jury is the last word on the subject. *Railroad Company* v. *Williamson*, 87 Miss. 344, 39 So. 489; *New Orleans, J. & G. N. R. Co.* v. *Hurst*, 36 Miss. 660, 74 Am. Dec. 785; Sedgwick on Damages, secs. 388, 1318; Southerland on Damages, sec. 1092; Thompson on Trials, sec. 2065.

In *Railroad Company* v. *White*, 87 Miss 120., there was a verdict for seven hundred and fifty dollars which the court did not find to be excessive. White was at a flag station to take a train and he had to get into Vicksburg about ten miles away. He flagged the train but it would not stop for him and it was denied by the men on the engine that they saw him flag although they were on the lookout.

In *Railroad Company* v. *Mitchell*, 83 Miss. 179, there was a verdict for one thousand dollars which was found to be not excessive. Mitchell was at the station of Glass and his case was based upon the same facts involved in *White's case, supra.* The parties, Mitchell and White,

were at the station to go to Vicksburg and did their best to stop the train and the men on the train did not stop it. They claim that they did not see the flag. The court said that the question of punitive damages was properly left to the jury and that "the fixing of the amount of such damages is peculiarly within the province of the jury. And this court interferes in such findings only when certain well-established and understood principles of justice demand."

In *Telegraph Company* v. *Watson*, 82 Miss. 101, there was a verdict for one thousand punitive damages for failure to deliver a telegram. The plaintiff did not get the telegram sent to her advising of the death of her husband. The court said one thousand was not excessive as punitive damages.

In *Railroad Company* v. *Kranfield*, 92 Miss 494, the court cut down the verdict to seven hundred and fifty dollars. The damages awarded in that case were all punitive. The young man got on a train which had been annulled because of a wreck ahead. He was told to get off by some one whom he thought was a railroad man. He was told in rough language to debark but in a low voice and in the presence of no third person. He was at his home, was at the station; it was in the daytime, and he at once went to the station and got his ticket cashed and went away.

In *Telegraph Company* v. *Hiller*, 93 Miss. 658, there was a verdict for one thousand dollars which the court reduced to five hundred dollars. This was all punitive damages. There was some delay in the transmission of the telegram asking for information as to the condition of the mother of the sender. His mother was getting along well and if he had received an answer it would have conveyed him good news. The telegram was delayed somewhat in the transmission and after it reached Canton, where it was to be delivered, it was first sent to the wrong man and then after the right man was found and he was known to be only about two blocks away, the agent told the mes-

senger boy that he might wait until morning to deliver it. He did wait and the sender not receiving an answer got on the train and came to Canton. The court held that he could recover his expenses incident to making the trip, amounting to sixty-seven dollars and that he might have five hundred dollars punitive damages. The offense in that case was negligible compared with that in the instant case. If five hundred dollars would stand in that case two thousand dollars would not be excessive in the instant case.

In *Railroad Company* v. *Fitzgerald*, 96 Miss. 197, the court reduced a twenty-five hundred dollar verdict to fifteen hundred dollars. The lady was on her way to New Orleans from Rosedale, Mississippi. She was traveling with her sister and when she got in her berth to retire for the night she gave the necessary mileage to the conductor. Later in the night she was awakened by a new conductor who demanded money telling her that her mileage was not good for an interstate trip and told her that she would have to pay the fare or get off the train. She did at last arrange it satisfactorily and remained in the berth and when she got to New Orleans the conductor went with her to see the superintendent who explained the rules of the company touching the mileage she was attempting to travel on. She claimed that the language of the conductor was rough and insulting. The jury awarded twenty-five hundred dollars and the verdict was allowed to stand at fifteen hundred dollars. In that case there was no such gross violation of the rights of the plaintiff as was shown in the instant case. There was no actual damage.

In passing upon verdicts in such cases the court looks to see how clear it is that the right of the parties were violated and also to the character of the violation. See remark of the court in the *Hiller case, supra.*

One thousand dollars punitive damages was held to be proper in *A. & V. Ry. Co.* v. *Bell*, 29 So. 818, where there there was a misunderstanding between a young man and

the conductor about transportation, the passenger insist-
ing that he had given the conductor his ticket, the con-
ductor insisting that he had not.    The young man was
ejected, not by physical force, but got back on the train
and rode to Clinton, his destination, on his ticket.    The
wrong was in no manner outrageous as that shown in the
instant case.

In *Y. & M. V. R. R. Co.* v. *Mattingly*, 37 So. 708, the
court permitted a verdict for twenty-five hundred dollars
to stand, all of which was really awarded as punitive
damages.    A traveling salesman tried to get on a train
at Vicksburg and a negro porter ·rudely denied him
admittance and stood on the steps and made a motion
as if to kick plaintiff.    The passenger was not touched
nor cursed and he got on the train at another place and
proceeded on his way safely.

The verdict of the jury does not manifest any bias or
prejudice.    Larger verdicts in cases not near so aggra-
vating nor well proven have been permitted by this court
to stand.    Besides there was some considerable actual
damages as the jury might have believed and found.
The lady was delayed at the crossing until she might have ·
been half way home.    It was eleven miles to her home
and it appears that they were driving a good horse.    She
could have been miles on her way at the time the cross-
ing was at last cleared if she had not been detained at
the railroad at all.    Many horses will not stand near a
train and patiently wait for it to move out.    There are
few horses that will stand and be contented near a train
across the road.    She was in quite a nervous condition.
The railroad company of course did not know a very
nervous lady was going to use the corssing.    But sick
people have the same right to use it as others.    The com-
pany is responsible for damages which may have been
suffered by one who was sick and who possibly would
not have suffered if she had been well.    And especially
is this true in a case where the default of the railroad
company was characterized by wantonness, willfulness
or capriciousness.

Argued orally by *Robt. B. Mayes*, for appellant and *J. M. Flowers*, for appellee.

REED, J., delivered the opinion of the court.

The appellee sued to recover from appellant actual and punitive damages sustained by reason of her detention at a crossing blocked by appellant's trainmen. There was a verdict for one thousand dollars. Appellee was ill and went in a buggy to see a physician about eleven miles from her home. On the trip it was necessary to cross appellant's railroad track. In going, the track was blocked for twelve·minutes, and in returning for forty-two minutes.

Under the statute, the crossing could have been blocked each time for five minutes. Section 4049, Code 1906. The appellee was kept waiting in the pbulic road at a railroad crossing for the total time of forty-four minutes. It was proper for the jury to award her damages.

Taking into consideration all of the facts and circumstances of this case, we deem the verdict excessive and to the extent that it evinces passion or prejudice on the part of the jury.

For this reason we reverse and remand the case, unless the appellee will enter a remittitur for five hundred dollars, in which event the case is affirmed. If remittitur is not entered, the judgment of the circuit court is reversed in so far as it fixes the amount of damages to be recovered. In all other respects, the judgment will remain in full force and effect, and the cause will be remanded only for the purpose of ascertaining the amount of damages to be recovered by the appellee.

*Remanded.*