Ellis B. HALL, Charles R. Hall and Eunice E. Hall, Plaintiffs-Appellants,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Defendant-Appellee.

No. 73-3106.

United States Court of Appeals, Fifth Circuit.

Nov. 18, 1974.

---

John S. Walker, Center, Tex., for plaintiffs-appellants.

Larry W. Starr, Longview, Tex., for defendant-appellee.

Before WISDOM and CLARK, Circuit Judges, GROOMS, District Judge.

WISDOM, Circuit Judge:

This wrongful death action, governed by Texas tort law under *Erie,* is unusual in that the instrumentality allegedly causing the wrongful death did not come into physical contact with the decedent. Ellis B. Hall, husband of Mrs. Dovie Hall, and their two children, Charles and Eunice Hall sued the Atchison, Topeka & Santa Fe Railway Co., for the wrongful death of Mrs. Hall. Vernon's Ann. Tex.Code, §§ 4675 and 5525. The theory of the plaintiffs' case, simply stated, is that the defendant railroad negligently blocked the decedent's access to the hospital to which she was being taken by her husband, that the decedent was suffering the onset of an acute asthma attack at the time, and that the delay occasioned by the blocked crossing aggravated the attack to such an extent that the decedent lapsed into a coma shortly after she did reach the hospital and died later in the day. At the close of the plaintiffs' case, the defendant moved for a directed verdict on three grounds relevant to this appeal: first, that there was no evidence upon which a finding of negligence on the part of the railroad could be based; second, that the evidence failed to demonstrate any causal connection between the defendant's conduct and the injuries and death complained of; and, third, that, even if cause in fact had been demonstrated, the injuries and death were not foreseeable, and therefore, as a matter of law, the defendant's conduct could not be their proximate cause. The trial court granted the directed verdict. We reverse and remand for a new trial.

## I.

In reviewing the evidence to determine the propriety of the district court's granting a directed verdict at the close of the plaintiff's evidence, this Court must observe the following standard:

The evidence must be viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of every inference favorable to him which may be fairly drawn. It is not for the court to weigh the conflicting evidence or to judge the credibility of witnesses. Whenever the evidence is such that fair-minded men may draw different inferences therefrom, and reasonably disagree as to what the verdict should be, the matter is one for the jury.

American Fidelity & Casualty Co. v. Drexler, 5 Cir. 1955, 220 F.2d 930, 932–933. See also Isaacs v. American Petrofina, 5 Cir. 1966, 368 F.2d 193.

Mrs. Dovie Hall had suffered from asthma for a number of years preceding her death. Dr. Vernon Polk, her personal physician from 1956 until her death in 1970, testified that in the months preceding her death her condition had deteriorated. He stated that in the year preceding her death she had a number of asthma attacks that had necessitated emergency treatment at the hospital in Center, Texas. On each occasion he had successfully controlled the attacks by the administration of drugs such as adrenalin or steroid compounds that dilate the bronchial passages and help restore the normal flow of air to the lungs. In some instances, he had administered a sedative to relieve the fear and anxiety typically accompanying a serious asthmatic attack. He gave such treatments on September 8, September 25, and on September 30, 1970, the day preceding her death. On September 29 or 30, at Dr. Polk's suggestion, Mr. Hall had driven the decedent to a major hospital in Galveston for further diagnosis, but she was not admitted. Dr. Polk testified presumably because those who examined her in Galveston concluded that every appropriate measure was being taken in Center by him as her personal physician. An automobile trip of this length might have aggravated her condition. Dr. Polk stated that, in the days before her death, he had no indication that she would die. On the contrary, he had always been able to control her attacks and if he had had any indication that

his mode of treatment would not be sufficient to control the symptoms, he would have ordered her immediate hospitalization for more intensive supervision. In response to a hypothetical question [1] regarding the effect of a twenty-five to forty minute delay in obtaining medical attention upon a patient suffering the onset of a severe asthmatic attack, and whether such a delay was a "major contributing cause" of her death, Dr. Polk answered in part:

> To be perfectly honest in answering this question, of course you cannot answer it. I don't think you can give an absolute answer to this question. From a legal standpoint, or whatever you are meaning to consider this legal thing here because as I have stated before, any delay in treating an asthmatic condition—the quicker you can get some definite, treatment started, the more likely you will be able to relieve the symptoms, is that an answer?

> .    .    .    .    .    .

> Well, I think the delay would certainly contribute in some measure to the condition, but whether it was a major factor in the woman's demise or not, I cannot—I mean, I am not going to—I don't know whether I can say it was a major or contributing factor in her demise; . . .

> .    .    .    .    .    .

> I think it would be a contributing factor, yes.

Dr. Polk further testified that Mrs. Hall checked in to the emergency room about 9 a. m. on October 1, and that, despite sedation and the other treatment outlined earlier in his testimony, she lapsed into a coma and died about 12 hours later. Administration of the drugs he gave her effected some improvement in her symptoms, but her over-all condition did not improve after she entered the hospital that morning.

Eunice Hall, her daughter, testified that when she left their home for work, some time between 6:30 and 7 a. m. that day, her mother appeared to be sleeping normally. Mr. Hall testified that the attack began between 7:30 and 7:45 and he and his wife set out for the hospital at once. He stated that their home was on Cotton Ford Road, and that usually it was a ten to twelve minute drive from their home to the hospital. That morning, however, a freight train blocked the Atchison, Topeka and Santa Fe crossing on Cotton Ford Road near the Bryce Lumber Mill. To drive from the blocked crossing on to the hospital would take five to six minutes. The only other route he was aware of would require a relatively lengthy detour and would take at least twenty-five minutes. There was no agent or employee of the defendant at the crossing or anywhere else in the vicinity, so far as he could tell. There was, therefore, no one to whom he could communicate the necessity for quick action, and no one to advise him what had caused the train to block the crossing

1. Counsel for the plaintiffs put the following hypothetical question to Dr. Polk, Mrs. Hall's physician at the time of her death:

> Assume, Doctor, that Mrs. Dovie Hall, a known asthmatic patient of yours, on the morning of October 1st, 1970, at approximately 8:00 A. M. upon experiencing significant difficulty in breathing, due to an asthmatic attack, started for the hospital, taking approximately ten minutes to get ready and get to the car driven by her husband, and assume further that in approximately one and a half or two minutes they reached a blocked railroad crossing at Cotton Ford on their way to town, and they waited from twenty-five to forty minutes before it cleared, and after the expiration of fifteen or twenty minutes while stopped at the crossing her condition rapidly grew worse to the point that she was pulling strongly for breath, and was in distress with the obvious inability to get her breath, with the condition growing worse all the time, and assume further that when the crossing was cleared, they immediately went straight to the emergency room of the Memorial Hospital, taking approximately two to three minutes, whereupon she received your care and treatment, and later entered a coma and died.

> Now, Doctor, based on these assumed facts, do you have an opinion as to whether or not the twenty-five to forty minutes' delay in reaching the hospital, in reasonable medical probability was a major contributing factor to her death?

and how long the crossing would remain blocked. The derailed cars were not visible to him from the crossing. As the minutes passed, Mrs. Hall's attack became more severe. Worse, she became terrified at the possibility that they would not reach the emergency room in time. Mr. Hall started to leave the crossing to summon help, but she begged him to stay with her. Her neck became swollen and the circulation in her extremities diminished. Finally the train was broken and the crossing cleared. The delay in reaching the emergency room was thirty to forty minutes.

There was also evidence to show that the derailment occurred some time before 8 a. m. that day, and that the Cotton Ford crossing was blocked at least one half hour. There was some testimony regarding the alleged poor state of repair of the track in the general area of the derailment. The sheriff of Shelby County testified that his office was not notified of the derailment and did not dispatch personnel to the scene to re-route traffic or otherwise alleviate the confusion that might be generated.

We conclude that this testimony made out a case for the jury.

## II.

The defendant's first ground for a directed verdict is that there is no evidence upon which a finding of negligence could be based. On the contrary, we find two grounds that would support a finding of negligence.

■ The record shows that the train blocked the Cotton Ford Road crossing for well over five minutes, in violation of a Texas penal statute, Vernon's Ann. Stat., art. 6701d–5. The law of Texas is settled that a violation of this statute constitutes negligence per se. *See* Louisiana & Arkansas R. Co. v. Hughes, 5 Cir. 1967, 374 F.2d 106, and the Texas cases collected there.

■ The defendant argues that the blocking was accidental rather than willful, as the statute requires. Whatever may be said of the cause of the derailment, there is nothing in this record to excuse the railroad's lengthy delay in breaking the train and making the crossing passable once the derailment had occurred. A jury finding of negligence therefore would be reasonable. *See generally* Morris, The Role of Criminal Statutes in Negligence Actions, 49 Colum.L.Rev. 21 (1949). Such a finding, however, affects only one element of the plaintiff's case in a negligence action; causation and damages must still be demonstrated.

■ The second ground that would support a finding of negligence on the part of the defendant is the doctrine of *res ipsa loquitur*. This doctrine recognizes that an inference of negligence may be drawn against a defendant when an injury is inflicted by an instrumentality under the control and management of the defendant, and the nature of the incident induces a reasonable belief that it would not have happened absent negligence. Texas courts have applied this rule of evidence to derailments occurring on railroads. *See, e. g.*, Washington v. Missouri, K. & T. R. Co., 1897, 90 Tex. 314, 38 S.W. 764. The chief justification for the rule is that the means of proof of negligence *vel non* are more readily available to the party against whom the inference is permitted than the party invoking the rule. Here, the plaintiffs laid a predicate for application of *res ipsa loquitur* by introducing evidence to demonstrate the generally poor condition of the track in the vicinity of the derailment. They also introduced evidence tending to show that freight cars had been observed "rocking" as they passed over the segment of track in question, that insufficient rock had been maintained in the trackbed, making it easier for a wheel to slip off, and that certain discarded railroad ties found in the vicinity of the derailment were rotten or showed other signs of great age. In these circumstances, the plaintiffs had offered enough evidence to raise an inference of negligence on the part of the railroad under the doctrine of *res ipsa loquitur*. It was then up to the

railroad to overcome that inference, if it could, in presenting its case to the jury.

On either ground, we think the plaintiffs adduced sufficient evidence of negligence to overcome a motion for a directed verdict on the negligence issue at the close of their evidence.

## III.

■ The defendant's second ground in its motion for a directed verdict was that the plaintiffs failed to demonstrate any causal connection between the defendant's conduct and the injuries and death of Mrs. Hall. To be actionable under Texas law, negligence must be a cause in fact of the injury complained of, but it need not be the only cause. *See, e. g.,* Montgomery Ward & Co. v. Newman, Tex.Civ.App.1944, 181 S.W.2d 613. Indeed, some courts have stated the Texas test for proximate cause so that it contains two main elements: cause in fact, and foreseeability. *See, e. g.,* Texas & P. R. Co. v. McCleery, 1967, 418 S.W.2d 494, 496; Leckbee v. Continental Airlines, Inc., 5 Cir. 1969, 410 F.2d 1191. In *McCleery,* the Texas Supreme Court said:

> Negligent conduct is, in law, a cause in fact of harm to another only if it is a substantial factor in bringing about the harm. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 355 (1951). Other than in situations in which the conduct of more than one person contributes to the harm, negligent conduct cannot be regarded as a substantial factor in bringing about the harm if the harm would have been sustained even if the actor had not been negligent. *Hopson,* supra; Radley v. Knepfly, 104 Tex. 130, 135 S.W. 111 (1911); Restatement (Second) of Torts § 432 (1965); 2 Harper & James, The Law of Torts § 20.2 (1956); Prosser, Law of Torts § 41 (3d ed. 1964).

418 S.W.2d at 497. *See generally* Green, Proximate Cause in Texas, 28 Tex.L. Rev. 471, 621, 755 (1949, 1950).

■ In this case, reasonable men might differ whether the twenty-five to forty minute delay in reaching the emergency room near the onset of a severe asthma attack, in light of all the other circumstances, was a substantial factor in causing Mrs. Hall's lapse into a coma and subsequent death. The question of cause in fact should therefore have been submitted to the jury.

## IV.

■■ The more difficult inquiry in this case is, of course, the one regarding foreseeability. Few areas of tort law are as beset with the potential for confusion as is that of foreseeability. The test in Texas, as we read the cases, is that an injury is foreseeable if, in light of all the circumstances, a reasonably prudent man would have anticipated that the injury would be a consequence of the act or omission in question. See, e. g., Clark v. Waggoner, Tex.Sup.Ct. 1970, 452 S.W.2d 437; Galveston, H. & S. A. R. Co. v. Bell, 1919, 110 Tex. 104, 216 S.W. 390. The precise nature of the injury and the manner of its infliction is immaterial to liability, so long as the injury is of a type that, in the circumstances, might reasonably have been expected to occur. See, e. g., Otis Elevator Co. v. Wood, Tex.Sup.Ct.1968, 436 S.W. 2d 324; Biggers v. Continental Bus System, 1957, 157 Tex. 351, 303 S.W.2d 359. Ordinarily, the question of foreseeability is one for the jury.

■ The defendant has urged that the injury sustained by Mrs. Hall in this case was not foreseeable as a matter of law, and has relied heavily on Kaufman v. Miller, Tex.1967, 414 S.W.2d 164. In *Kaufman,* the Texas Supreme Court held that it was not foreseeable, as a matter of law, that the plaintiff, the driver of a vehicle which was struck by the defendant's vehicle, without substantial damage to either vehicle or any personal injury, would later suffer a "conversion reaction neurosis" to which he was "peculiarly susceptible" as the result of an earlier accident. *Kaufman* denied recov-

ery for the particular sort of psychological injury allegedly sustained as a result of the accident, but the Texas Supreme Court carefully limited its holding to the facts of the case, and declined to fashion a broad rule denying liability in all circumstances involving the infliction of psychological injury because it recognized that "this field of law is in a developing process, as is the field of psychiatry". *Id.* at 171.

In relying upon the narrow holding of *Kaufman*, the defendant obscures the distinction between that case and the one before us. *Kaufman* should be grouped with those cases denying recovery for intentionally or negligently inflicted emotional distress or other psychological injury not springing from some physical injury also inflicted in the same tortious conduct. In such cases, the courts have traditionally been reluctant to impose liability. *See, e. g.*, Prosser, Law of Torts § 43, at 269–70 (4th ed. 1971); ALI Restatement (Second) of Torts §§ 313, 436A (1965).

The present case, however, involves injuries allegedly sustained because the defendant negligently blocked the decedent's access to the emergency room of a hospital, and hence must be examined in light of the broad principles Texas has evolved regarding foreseeability, rather than the specific rules of the psychological injury cases. We have summarized the Texas position earlier. The Second Restatement of Torts lays down a roughly parallel rule, more fully articulated and integrated, which has been cited with approval by Texas courts:

§ 435.

*Foreseeability of Harm or Manner of Its Occurrence*

(1) If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable.

(2) The actor's conduct may be held not to be a legal cause of harm to another where after the event an looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm. Restatement (Second) of Torts § 435 (1965).

We stress that the question confronting us is not whether the injuries sustained by Mrs. Hall were in fact foreseeable under Texas law, but whether the federal district court was correct in concluding as a matter of law that they were *not* foreseeable. There are, to be sure, no Texas cases in point. There are, however, cases in other jurisdictions that have allowed recovery for personal injuries sustained as a result of the delay occasioned by a railroad's negligent obstruction of a crossing on a public street, road, or highway. *See, e. g.*, Southern R. Co. v. Jarvis, 1914, 11 Ala. App. 635, 66 So. 936 (recovery denied because plaintiff failed to demonstrate *negligent* obstruction in the circumstances, and to show actual injury sustained); Shields v. Louisville & N. R. Co., 1895, 97 Ky. 103, 29 S.W. 978 (dictum); Anderson v. Alabama & V. R. Co., 1903, 81 Miss. 587, 33 So. 840 (injury to health); Illinois C. R. Co. v. Engle, 1912, 102 Miss. 878, 60 So. 1 (damages proper for obstruction of road traveled by plaintiff to consult her physician regarding her illness); Terry v. New Orleans G. N. R. Co., 1913, 103 Miss. 679, 60 So. 729 (recovery allowed for injuries sustained because plaintiff's physician was delayed on his way to attend at childbirth); Parker v. Southern R. Co., 1916, 111 Miss. 669, 71 So. 912.

Thus, if we borrow the formulation of the Second Restatement of Torts, we must recognize that a number of state courts have not found it "highly extraordinary that [negligent obstruction by a railroad of a public way] should have brought about the harm." Or, if we use the more familiar Texas standard, we must frame the question as follows: In the present case, can it be said, as a matter of law, that a reasonably prudent person could *not* have foreseen

that, by blocking one of the major access roads to Center, Texas, for a substantial length of time without making any effort to re-route traffic, the condition of a person seriously in need of immediate medical attention in the city who was delayed by the obstruction might be materially aggravated? We hold that it can not. This inquiry, like that regarding cause in fact, is one that must properly be left to the jury.

The judgment of the district court is therefore reversed, and the case is remanded for further proceedings consistent with the views expressed here.

Reversed and remanded.