MRS. A. H. TERRY v. NEW ORLEANS GREAT NORTHERN
RAILROAD COMPANY.

[60 South. 729.]

1. RAILROADS. *Obstructing highways. Damages. Proximate cause.
   Code 1906, section 2049.*

   In a suit for damages against a railroad caused by blocking a
   public highway in violation of Code 1906, section 4049, where
   the evidence showed that plaintiff, while suffering intensely
   from pains incident to childbirth, sent for a doctor, who in
   going to her was delayed for forty-five minutes at a railroad
   crossing by a train which blocked the crossing, and that by
   such delay plaintiff's sufferings were prolonged and she suffered
   other injuries; such blocking of the highway was the proximate
   cause of the injury sustained by plaintiff from the doctor's delay
   in reaching her.

2. SAME.

   In such case while the employees of defendant could not have
   anticipated that a physician on his way to her bedside would

arrive at that particular time, they should have anticipated that some person might be detained, and that injury would result either to the traveler himself or to some other person.

3. SAME.

Under the facts in this case the question as to whether or not plaintiff sustained any additional injury from the delay of the doctor in reaching her was for the jury to decide.

APPEAL from the circuit court of Marion county.

HON. A. E. WEATHERSBY, Judge.

Suit by Mrs. A. H. Terry against the New Orleans Great Northern Railroad Company. From a judgment for defendant, the plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Whitfield, McNeil & Whitfield,* attorneys for appellant.

From a very elaborate brief of counsel for appellee, it appears that this peremptory charge was given on the notion that there was no causal connection between the blocking of the public crossing by the railroad, and the injury inflicted on Mrs. Terry from which she sustained the damages. Since this case was appealed this court has most correctly decided that in just exactly such a case the liability is clear on the part of the railroad, and that the causal connection between the blocking by the railroad of the public crossing and the injury is perfectly plain.

We refer to the case of *Illinois Central Railroad* v. *Engle,* 60 So. 1. REED, J., delivering the opinion: "The appellee sued to recover from appellant actual and punitive damages sustained by reason of her detention at a crossing blocked by appellee's trainmen. There was a verdict for one thousand dollars. Appellant was ill, and went in a buggy to see a physician about eleven miles from her home. On the trip it was necessary to cross appellee's railroad track. In going the track was blocked for twelve minutes, and in returning for forty-two minutes. The appellant was kept waiting in the public road

at a railroad crossing for the total time of forty-four minutes. It was proper for the jury to award her damages.''

We most respectfully submit that this case is the exact counterpart of the one we are presenting, and that this decision is the end of this controversy, and settles the proposition that the defendant was liable, and that the causal connection between the blocking of the public road and the injury is plain. There really is no need for the court to go one step further, it can stop, standing upon this authority, and promptly reverse this judgment. But out of deference to our good friend, Mr. Mounger, who has labored strenuously and elaborately to save this utterly weak case, we will briefly state the general principles governing as to the causal connection between the act and the injury and then refer to some decisive authorities, and submit the case.

In the case of the *Cumberland Telephone Company* v. *Woodham,* 54 So. 890, opinion by Chief Justice SMITH, the court most accurately announced the doctrine of proximate cause as follows: ''It is true appellants could not have anticipated that the particular injury complained of would have resulted either from their negligence, or that the injury would have occurred in the particlar manner in which it did, but they could and ought reasonably to have anticipated that some injury would result therefrom.''

We have found this admirably clear statement of the true principle emphatically reiterated in a very recent case from the Indiana Supreme Court, *Cleveland, Cincinnati, etc., R. R. Co.* v. *Paul O. Tanner,* 39 L. R. A. (N. S.), 20. In that case the railroad company was held liable for permitting a train to stand on a street crossing in violation of the statute, for injury thus caused to private property through the inability of the city fire apparatus to reach the property because of such obstruction. This is a fine case which we submit to the court's

attentive consideration. In the course of the opinion it is said on page 22: "Violation of the statutory duty is negligence *per se* and when injury and damage flow directly therefrom as a natural and probable result of a wrongful act, liability is incurred by the wrongdoer," citing perhaps twenty authorities, and proceeding as follows: "While consequential damages which may be recovered are such as might reasonably be anticipated by the perpetrator of the wrongful act, and must be the natural and probable effect of the wrongful act, yet it is not essential to a recovery against the wrongdoer that he should have foreseen the identical injury to the particular person. If the act has a tendency to injure someone, and finally does so, the wrongful act is a proximate cause;" citing a large number of authorities.

When the court said that it was not essential that the wrongdoer should have foreseen the identical injury to the particular person, he announced the exact doctrine Chief Justice Smith announced in the Woodham case. The same doctrine is announced in the case of *Houren* v. *Chicago, M. & St. P. R. R. Co.,* 236 Ill. 620.

The great repository of all the law on this subject of proximate cause is the splendid monographic note to the case of *Gilson* v. *Delaware, etc., Canal Co.,* 36 Am. St. Rep. 807 to 861 inclusive. We shall quote but briefly, commending the whole note to the careful consideration of the court. It said on page 808: "But the practical construction of proximate cause by the courts has come to be the cause which actually led to and which might have been expected to be directly instrumental in producing the result." *State* v. *Manchester,* 52 N. H. 552.

And again it is said, page 809: "A proximate cause is one without which the accident would not have occurred," taken from *Taylor* v. *Baldwin,* 78 Cal. 517.

And again Mr. Freeman states it thus, page 809: "In determining what is the proximate cause, the true rule is that the injury must be the natural and probable consequence of the negligence."

And again on page 810 he points out that in order to be the proximate cause it is not necessary that the result should be inevitable, if it was natural; and once more on page 810, in exact conformity with Judge Smith's opinion in the Woodham case, Mr. Freeman says, paragraph D.: "On the other hand it appears to be an accepted principle that the liability of the defendant does not depend upon whether, by the exercise of ordinary prudence, he could or could not have foreseen the precise form in which the injury actually resulted, and that he may be held for anything which, after the injury is complete, appears to have been a natural and probable consequence of this act;" citing a multitude of cases, and at the conclusion he says: "If we combine this principle with the one stated in the preceding paragraph, the result seems to be that, when the act complained of was such that, in view of all the circumstances, it might not improbably cause damage of some kind, the doer of the act cannot shelter himself under the defense that the actual consequence was one which rarely follows from that particular act."

We direct finally the court's most special attention to what Mr. Freeman says in paragraph 37 of the note at page 851, under the caption of "Functions of Court and Jury in the Determination of Proximate and Remote Cause." He thus clearly and emphatically states the rule: "There appears to be no dispute as to the proposition that the question of causal connection between the wrongful act and the injury complained of is ordinarily for the jury, under proper instructions from the court;" citing fifty or a hundred authorities.

Apply this to the case in hand. It is not perfectly plain that the court most greviously erred in undertaking to say, as a matter of law, that there was no causal connection in this case? Just exactly the counterpart of the case *supra,* in which Judge Reed delivered the opinion. *Engle* v. *I. C. R. R. Co.,* —— Miss. ——.

Other cases referred to by Mr. Freeman are as follows: "The case of *Andrews* v. *Mason City, etc., Ry. Co.,* 77 Iowa, 669, as authority for the proposition that if a noise, made by a train which is obstructing a public highway and has continued to so obstruct it for an unreasonable length of time, frightens a team, the fact that said team got frightened is a sufficient cause for damages against the defendant railroad company.

The case of *Pa. R. R. Co.* v. *Kelly,* 31 Pa. St. 377, is cited as holding that the question of proximate cause was one for the jury, and this was a case involving the blocking of a highway by a train for an unreasonable length of time in violation of a state statute prohibiting such blocking.

In a case involving the omission by the railroad company to give signal at public crossing, the supreme court of Illinois held that where the question of the causal connection is doubtful, it should be submitted to the jury, as in the case of *Chicago R. R. Co.* v. *McDaniels,* 63 Ill. 122. To the same effect is *Orcutt* v. *Pac. Coast R. R. Co.,* 85 Cal. 291.

Mr. Freeman further points out in "g" of his note above mentioned that in the case of *Metallic Compression Casting Co.* v. *Finchburg R. R. Co.,* 109 Mass. 277, the supreme court held a railroad company liable for negligently cutting in two the fire hose which had been laid across its track and thus caused the destruction of plaintiff's building. He further points out that that case was followed in the case of *White* v. *Colorado Central R. R. Co.,* 5 Dill. 429, where a railroad company's negligence in storing gunpowder in a building with other goods was held to be the proximate cause of the loss of goods by fire on the ground that the firemen were thereby deterred from approaching the building.

Surely if the railroad company can be held to be liable for blocking a highway, and thereby preventing the fire company from crossing the track to put out the fire, on

the same principle they should be held liable for blocking a highway, and preventing a physician from crossing a track getting to a human being suffering from great pain. A physician is as liable to be called at any time as the fire company, but the physician's errand is frequently of more importance than the fire company's errand, inasmuch as human life is more valuable than human property. On the facts of this case and under a multitude of authorities cited by Mr. Freeman in the above masterly note, the circuit judge committed grievous, reversible error in taking this question of the causal connection between the unlawful act of the railroad from the jury who alone had the right to decide it. We, therefore, respectfully submit that this case must, necessarily, in the interest of justice and law be reversed and remanded for a new trial.''

*Dale & Hall* and *Davis & Glass,* attorneys for appellant.

Counsel for appellee contend to the court that the blocking of this crossing was not a proximate cause of appellant's injuries, but that, if anything, it was only a remote cause, and one for which her injuries were not recoverable. We contend that the action of the railroad company in this instance is the proximate cause of the injuries suffered by appellant, and that under the law she was entitled to recover damages for such injuries. At least, the blocking of this crossing was the concurrent or intervening cause for which the railroad company would be liable to appellant for her injuries sustained We think this was clearly decided by this court in the case of the *Cumberland Telephone & Telegraph Company et al. v. Woodham,* 54 So. 890.

In the case of the *Cumberland Telephone & Telegraph Company et al.* v. *Woodham,* this suit was instituted by Mrs. Woodham et al. for the recovery of damages sustained by appellee for the death of Mr. R. A. Woodham, the facts of which case this court is, of course, familiar,

The court in its opinion in this case said, "Without attempting to define proximate cause in such terms as will be applicable to all states of fact—for to do so is practically impossible—it will be sufficient to say that the negligent act of a person, resulting in injury, is the proximate cause thereof and creates liability therefor, when the act is of such character that, by the usual course of events, some injury, not necessarily the particular injury, or injury received in the particular manner complained of, would result therefrom, provided the attendant circumstances are such that an ordinary prudent man ought reasonably to have anticipated that some injury would probably result from the act done. In order that a person may be liable for damages resulting from his negligence, it is not necessary that his negligence should have been the sole cause of the injury. His negligence may be the proximate cause, where it concurs with one or more causes in producing an injury, and, although the author or authors of such cause or causes may also be liable therefor. 29 Cyc. 492-496 inclusive, and authorities there cited. "If a defendant is negligent, and his negligence combines with that of another, or with any other independent intervening cause, he is laible, although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury." *Susie B. Harrison* v. *Kansas City Elec. Light Co.,* 195 Mo. 606, 93 S. W. 951, 7 L. R. A. (N. S.) 293.

It may be true that appellee, the New Orleans Great Northern Railroad Company, could not have anticipated this particular injury as complained of by this appellant from its negligence, and it may be further true that the railroad company could not have anticipated that such an injury would have occurred in this particular manner, but appellee, the railroad company, ought to have reasonably anticipated that some injury would re-

sult, or probably would result, from the blocking of this railroad crossing for so great a length of time, and if this be true, then it is liable for such injuries and such damages as was sustained by appellant because of such blocking. Says the court in the case of the *Cumberland Telephone & Telegraph Company et al.* v. *Woodham*: "In order that a person may be liable for damages resulting from his negligence, it is not necessary that his negligence should have been the sole cause of the injury. His negligence may be the proximate cause where it concurs with one or more causes in producing an injury."

"If the defendant is negligent and his negligence combines with that of another, or with any other independent intervening cause, he is liable, although his negligence was not the sole negligence, or the sole proximate cause, and although his negligence, without such other independent intervening cause, would not have produced the injury." *Susie B. Harrison* v. *Kansas City Elec. Light Co.*, 195 Mo. 606, 93 S. W. 951, 7 L. R. A. (N. S.) 293. This peremptory instruction should not have been given appellee, but the same should have gone to the jury.

"A railroad company which violates an express statutory duty, in placing or causing an obstruction in a public highway at a crossing, will not be heard to say that it did not anticipate an injury resulting directly from such unlawful act." 33 Cyc. p. 297. Footnote, *Evansville, etc., R. Co.* v. *Carvener*, 113 Ind. 51, 14 N. E. 738.

"Where a railroad company is guilty of an illegal obstruction by its train of cars, and an injury results therefrom, the company is liable for the damages occasioned thereby; and the claim that the obstruction was the remote and not the proximate cause of the injuries cannot be sustained, the doctrine of remote and proximate causes having no application in such cases." 15 Century Digest (d), section 53, Damages. *Pennsylvania R. Co.* v. *Kelly*, 31 Pa. St. (7 Casey) 372.

"The act of a railroad company in obstructing the streets of a city in violation of Hurd's Rev. St. 1908, chap. 114, section 77, prohibiting a railroad company from obstructing a public highway by cars for more than ten minutes, is the proximate cause of the destruction of a building by fire when the obstruction prevented a fire department from extinguishing the fire, since a prudent person, if reflecting on the probable consequence of closing up the street, would have foreseen that to do so would obstruct public travel, including a fire department, and that, if the travel of a fire department was obstructed, any fire which the firemen were seeking to reach would do greater damage." *Houren* v. *Chicago, M. & St. P. Ry. Co.,* 86 N. E. 611.

*Mounger & Mounger,* attorneys for appellee.

We think that the fourth assignment of error is the only one calling for serious discussion. By this assignment the appellant complains that the court erred in granting a peremptory instruction for the defendant. We think that this action of the court was proper and will devote the remainder of this brief to the proposition that the court was correct in giving a peremptory instruction.

The action in this case is based upon a violation by the defendant of section 4049 of the Code of 1906. Under the rules of law by which this statute is interpreted the plaintiff cannot recover unless she shows that she suffered damages by reason of a violation of the statute and that these damages are directly traceable to this violation as the proximate and direct cause thereof. *Y. & M. V. R. R. Co.* v. *Alexander,* 62 Miss. 499; *Anderson* v. *A. & V. R. R. Co.,* 81 Miss. 587.

We have read exhaustively upon this subject and we find very few cases exactly in point and we think that it would be helpful first to discuss briefly the general principles applicable, as found in the textbooks. In Sedg-

wick on Damages, Student's Series, at page 54, the rule of the defendant's responsibility in a case of this kind is stated as follows: "Legal responsibility in tort extends to any injurious consequence, resulting by ordinary natural sequence, whether foreseen by the wrongdoer or not, provided that the operation of the cause of action is not interrupted by the intervention of an independent agent or overpowering force, and that but for the operation of the cause of action the consequence would not have ensued."

We submit that under this rule there could not be a recovery in the present case for the reason that the damages undertaken to be proved did not follow by the natural sequence. .But even if it could be said that the damages followed as a natural sequence, still there could not be a recovery because the result did not follow as an ordinary natural sequence. In addition to all this the damages attempted to be recovered in this case could not be brought within the rule because the effect of blocking the crossing operated as a secondary cause and not as a first cause. And the injury complained of proceeded from a cause indepndent of this and from an overpowering force, to-wit: The sickness from which she was suffering before the blocking of the crossing. And finally it cannot be said that the consequences complained of would not have ensued but for the blocking of the crossing.

Again the rule is stated in 1 Thompson on Negligence, section 44, as follows: "No negligence, or other wrong of any kind whatsoever, can furnish the foundation of an action for damages unless it was the proximate cause of the injury suffered by the plaintiff."

In Hale on Torts, Hornbook Series, at page 207, liability for damages is discussed, and for the purposes of liability the consequences of wrongful conduct is divided into two classes, (a) proximate consequences, and (b) remote consequences; and the rule is then stated thus: "Compensation may be recovered only for proximate

losses resulting from wrongful conduct, and never for any losses which are remote.''

On page 208 the discussion is continued and ,for the purpose of determining what consequences are proximate and what remote, it is said that the losses caused by a wrong may be divided into two classes, (a) direct, and (b) consequential losses; and two rules are then given as follows: ''Direct losses are such losses as proceed immediately from wrongful conduct, without the intervention of any intermediate cause. Direct losses are necessarily proximate, and compensation therefor is always recoverable.''

The discussion is continued and on page 210 it is said that consequential losses are the indirect losses caused by wrong, but to which some intermediate cause has contributed and that consequential losses may be divided into two classes such as are, (a) proximate, and (b) remote; and the rule is thus stated: ''Consequential losses are proximate when the natural and probable effect of the wrongful conduct under the circumstances is to set in operation the intervening cause from which the loss directly results. When such is not the natural and probable affect of the wrongful conduct, the losses are remote.''

Following the statement of this rule, the author gives in the following pages, a very clear exposition of its meaning and from this discussion we take the following extracts:

At page 211 it is said: ''The damages recoverable for either a tort or a breach of contract must result without intervention of any independent cause.''

At page 213 it is said: ''Liability for consequences must end somewhere, and the law has fixed this limit at the natural and probable consequences. Compensation is recoverable for consequential losses only when they are proximate. Consequential losses are proximate only when they are natural, and probable.''

From page 214 we take the following: "In all cases, it is, of course, prerequisite to any liability that defendant's act had an influence in causing the injury. There must be an immediate and natural relation between the act complained of and the injury, without the intervention of other independent causes, or the damages will be too remote."

In the following pages the author then gives illustrations of the application of this principle and concludes a discussion of the rule with a paragraph devoted to a discussion of "Anticipation of Consequences," and that paragraph is concluded as follows, at page 221: "No person can be required to guard against the extraordinary or unusual consequences of an act; and, there being no duty to guard against them such losses are *damnum absque injuria*. The loss—the *damnum*—is there but the *injuria* is wanting."

The damages claimed by the appellant in this case cannot be classed as direct damages but on the contrary they are clearly consequential damages. In Sedgwick on Damages at page 496, it is said: "Direct damages are those which is so closely connected with the wrong complained of that they may be said to be involved in the assertion of the right of action."

We therefore repeat that the damages sought to be recovered in this case are in their nature consequential damages and not direct damages and hence the inquiry must be whether they are (1) consequential proximate, or (2) consequential remote. Even conceding that the defendant's act in blocking the crossing caused the appellant damages (and this is conceded for the purpose of the argument), this is the utmost concession that the appellee can make; that the appellant on the other hand must concede that the damages claimed, if they exist at all, were consequential damages and not direct. The question then is as to what class of consequential damages they belong to—(1) proximate, or (2) remote.

Having arrived at this point we contend that the damages claimed by the appellant are remote, that is to say consequential damages that are remote and for that reason they are not such damages as can be recovered.

In 36 Am. St. Rep. there is a valuable note to the case of *Gilson* v. *Del., etc., Canal Co.* At page 817 there is a discussion of the exact point involved in this case. Under the subtitle ''(b) Breach of Statutory Duty,'' it is said: ''The general rule is that if a breach of a statute is relied upon by the plaintiff as a cause of action he must show not only that he is one of the class for whose benefit the statute created a duty (*Gilson* v. *Leonard,* 143 Ill. 182, 36 Am. St. Rep. 376, citing several cases), but also that the breach of the statute is the proximate cause of the injury. *Laflin, etc., Powder Co.* v. *Tearney,* 131 Ill. 322, 19 Am. St. Rep. 34. The question is, was the breach a *causa sine qua non,* and a cause which, if it had not existed, the injury would not have taken place.'' (Citing many cases.) ''The doctrine held in some early cases that a breach of statutory duty was evidence not only of negligence, but also that such negligence caused the injury complained of is now abandoned.''

The editor in the same paragraph then proceeds to criticize the case of *Poland* v. *Earhart,* 70 Iowa, 285, where the defendant sold a revolver to a minor in contravention of a law making such sales a misdemeanor, and the vendee in using the weapon shot himself in the hand. The editor says: ''The court held that there could be no recovery unless there was something in the minor's disposition or want of experience from which the defendant might reasonably have anticipated that such an accident would happen.''

After the editor has thus stated the holding of the court in the case of *Poland* v. *Earhart* above mentioned, he then proceeds to make a criticism thereof and does so in the following words:      ''It seems to us that the ac-

cident was precisely one of those which the statute was designed to prevent."

The Mississippi supreme court in the case of *Meyer* v. *King*, 72 Miss. 12, expressly disapproves of the above criticism of *Poland* v. *Earhart*, and in doing so indirectly approves the holding in the case of *Poland* v. *Earhart*. See *Meyer* v. *King*, 72 Miss. 12, where Judge WHITFIELD, in delivering the opinion of the court, used this language: "See generally for the most accurate discussion of the whole subect that has fallen under our eye, the exhaustive note of 36 Am. St. Rep. 807-871. We approve the criticism of *Harrison* v. *Berkley*, 1 Strod. 525, on page 830, but disapprove the criticism of *Poland* v. *Earhart*, 70 Iowa, 285 found on page. 817.

In line with this, we call the court's special attention to the following cases: *Railway* v. *Brooms*, 78 Miss. 329; *Western Union Tel. Co.* v. *Adams Machine Co.*, 92 Miss. 849.

We have already referred to the case of *Meyer* v. *King*, 72 Miss. 1, and have shown that this case is in line with the contention which we are here making and that it expressly approves the doctrine as stated in the note found in 36 Am. St. Rep. 807-861. We find that *Meyer* v. *King*, is cited in *Railway Company* v. *Brooks*, 78 Miss. 97. We submit that this, the Brooks case, is decided solely upon the ground that the damages claimed were remote and that the court in so holding necessarily adopted the contention of the attorneys for the railroad company as made in their brief at page 93; that the drinking of the oil was the proximate cause of the death of the cows and that the accumulation of the oil in holes was a remote cause, and that the escape of the oil from defendant's tanks was a cause still more remote. By the same process of reasoning we may say in this case that the sickness of Mrs. Terry was the direct cause of her suffering. The absence of anything to relieve her may or may not come in next, but waiving the question as

to whether it be or be not certain as to whether this operated as a cause at all, the place of its operation is remote. The delay of the doctor then comes in as a matter, not certainly, but only possibly, having an influence, and then the blocking of the crossing comes in behind that as a still more remote cause for the injury complained of. Waiving every question of the uncertainty as to what causes operated towards producing the injuries complained of, if the blocking of the crossing operated at all, it did so as a cause removed at least to a distance of four links away.

We have examined with care the case of *Cumberland Telephone & Telegraph Co.* v. *Woodham,* 54 So. 890, relied upon by the appellant, and we find nothing in this case which seems to us to conflict with our position. We think that on the facts in the record in the Woodham case it was decided correctly and that in view of the facts there under consideration, the language used by the court in deciding the case and quoted by counsel for appellant in their brief, was both apt and correct. We make no attack upon the rule there stated nor the manner in which it is stated, but we insist that if the case has any bearing either one way or another, upon, the case here under consideration, it supports our contention, and not the contention of the appellant. We insist that admitting that the rule as there stated obtains, and admitting that it is applicable and governs in this case, the appellant has not brought her case within the operation of the rule and shown herself entitled to recover under the rule because, "the attendant circumstances" at the time of the blocking of the crossing were not such that "an ordinarily prudent man would reasonably have anticipated" that some injury would probably result "either to the appellant or to any other person not present."

It is clear that the court was recognizing and applying the rule for which we have been contending and as stated in the first part of this brief: That responsibility

for tort extends to any injurious consequences resulting by ordinary, natural sequence, but not beyond ordinary natural sequence. That negligence or any wrong of any kind whatsoever cannot furnish a foundation for an action for damages unless it was the proximate cause of the injury suffered by the plaintiff. That compensation may be recovered only for proximate losses resulting from wrongful conduct and never for any losses which are remote. That while a party may recover for losses which are consequential, provided they be proximate, yet consequential losses are proximate only when the natural and probable effect of the conduct under the circumstances is to set in operation the intervening cause from which the loss directly results. That when such loss is not the natural and probable effect of the wrongful conduct the losses are remote. That liability for consequences must end somewhere and the limit is fixed by the law at the natural and probable consequences. That consequential losses are proximate only when they are natural and probable and that there must be an immediate and natural relation between the act complained of and the injury without the intervention of any other independent causes, else the damages will be too remote. That no person can be required to guard against the extraordinary or unusual consequences of any act and there being no duty to guard against them, such losses are *damnum absque injuria.*

We submit that if the road at the place where it was blocked, instead of being a quiet county road in a thinly settled country, where few people traveled, had on the contrary been a wide street in a thickly settled city where a stream of travel was passing during every minute and every fraction of a minute during the day or night; where people in passing did not drive leisurely along but where they came in haste and went in a rush; then the circumstances would have been very different.

Under such circumstances the results naturally, reasonably, and probably ensuing from the delay, would be

very different from what they would under the circum-
stances existing at the time and place defendant blocked
the crossing in the case at bar. Those things, which un-
der the circumstances existing as shown by this record,
lay only within the range of the possible and far beyond
the foresight of the ordinary human being, would under
other circumstances have been brought within the range
of the probable and within the view of ordinary human
foresight. This case is not to be decided upon what could
possibly happen, but it is to be decided upon what would
ordinarily and probably happen under the circumstances
then and there existing. While it may be said that such
damages as the plaintiff claims to have suffered was a
thing possible to result, it certainly cannot be said that
it was a thing that would naturally and ordinarily, or
probably, occur.

SMITH, C. J., delivered the opinion of the court.

On the occasion in question Dr. Bufkin, a physician,
was on his way to the bedside of appellant, who was
suffering intense pain and anguish incident to the abnor-
mal presentation of a child to which she was then about
to give birth. The highway necessary to be traveled by
Dr. Bufkin in reaching appellant's home crossed the track
of appellee's railroad. When he reached the crossing,
he found it blocked by an unusually long freight train.
There was, according to his testimony, no opening in this
train at any point, and it continued to obstruct the high-
way for a period of between thirty and forty minutes.
Shortly after the doctor reached the crossing, the em-
ployees of the train were informed by a gentleman who
was accompanying him that the crossing was blocked, and
were requested to open it. This request, according to
the evidence introduced by appellant, was ignored. Ac-
cording to the testimony introduced by appellee, the
crossing was blocked for a period of about forty-five min-
utes, but during all of this time there was an opening

in the train about fifteen or twenty feet from the cross-
ing. When the doctor reached appellant's bedside, he
found her so much exhausted that he was compelled to
relieve her quickly of the child, which he did in about
ten minutes after his arrival, some laceration of her body
resulting therefrom. The delay in the doctor's reaching
her evidently prolonged her suffering and resulted in her
greater exhaustion, probably necessitating the use by the
doctor of a different method in delivering her of the child
than he would otherwise have used, which method prob-
ably resulted in a greater laceration of her body.

At the close of the evidence, the court peremptorily
charged the jury to find for appellee on the ground, we
infer from the argument of counsel, that appellee's neg-
ligence in obstructing this highway was not the proxi-
mate cause of appellant's pain and suffering being in-
creased and prolonged, and of the laceration to her body
incident to the method pursued by the physician in de-
livering her of the child. In this the court was in error.
Appellant, as a member of the general public, had the
right to have this highway remain unobstructed so that
it could be used by her for any legitimate purpose and
having a physician to travel over it to reach her bedside
in order to reliever her pain and suffering was, of course,
such a purpose. Appellee, under section 4049 of the
Code, owed her the duty of refraining from obstructing
this highway for a longer period than five minutes, and
it is liable to her for any damage which has resulted to
her by reason of its having obstructed the highway. *Rail-
road Co.* v. *Engle,* 60 South. 1. While it is hardly prob-
able that the servants of appellee could have anticipated
that appellant would be in need of the services of a phy-
sician at the time they blocked this crossing, and that
such physician on his journey to her bedside would ar-
rive at that particular point at that particular time, they
could, and ought to have anticipated that some person
traveling along the highway might be detained by rea-

son of its being blocked, and that injury would result therefrom, either to the traveler himself or to some other person. This is sufficient to constitute the negligent blocking-of the crossing the proximate cause of any injury which appellant sustained by reason of Dr. Bufkin being detained thereby. ⱴ*Telephone Co.* v. *Woodham,* 99 Miss. 332, 54 South. 890; *Y. & M. V. R. Co.* v. *Smith,* 60 South. 73; *Railway Co.* v. *Tàuer* (Ind.), 96 N. E. 758, 39 L. R. A. (N. S.) 20.

It seems clear from the evidence that appellant's suffering was prolonged by the delay of the doctor in reaching her bedside, but whether she sustained any additional injury thereby is a question of fact for the jury.

*Reversed and remanded.*