NEW ORLEANS & N. E. R. R. Co. *v.* BRYANT, ET AL.

In Banc. May 22, 1950.

No. 37510 (46 So. (2d) 433)

194

Heidelberg & Roberts, for appellant.

196

C. F. & Homer W. Pittman, for appellees.

**Roberds, J.**

Appellees, in this action, seek to recover of appellant Railroad the sum of $2,932.31, claimed by them to be the value of a house owned and occupied by them as a residence, and of the household and kitchen furniture therein, and the clothing and personal effects of themselves and their minor children, destroyed by a fire, such loss being the result, as claimed by plaintiffs, of the tortious act of appellant in unlawfully blocking Market Street Crossing in Hattiesburg, Mississippi, thereby preventing the fire department of the municipality from extinguishing the fire. The jury found for plaintiffs in the sum of $1,750.00. On this appeal the Railroad urges four asserted reversible errors we deem necessary to decide.

It says, first, the evidence is insufficient to sustain a finding of liability. It requested, but was refused, a peremptory instruction. It now contends the

instruction should have been granted. We will pass upon that question. Plaintiffs invoked Section 7780, Mississippi Code 1942, and Ordinances 458 and 302 of the municipality. The Code section makes it unlawful for a railroad to block a public highway and obstruct traffic thereover for a longer period than five minutes and Ordinance 458 does the same thing as to the streets of Hattiesburg. Ordinance 302 gives the fire fighting equipment the right of way over the streets, avenues and alleys of the City in going to and from fires, and requires all persons to clear the street crossings upon the sound of the fire alarm. The Code section and the Ordinances impose fines and penalties for their violation. Appellant argues that the proof does not show that it blocked Market Street five minutes, or, if so, it fails to establish it blocked traffic thereover for that time. Some of the witnesses for defendant so testified; other witnesses said the crossing was blocked by the train of appellant considerably longer than five minutes and some testified such blocking continued for a longer period than five minutes after the fire trucks reached the crossing. On this conflicting evidence the jury had the right to find the crossing was blocked longer than five minutes after the fire trucks approached the crossing, if that fact be essential to liability, which we need not decide.

Appellant also urges, in support of its request for a peremptory, that no causal connection is shown between its blocking of the crossing and the destruction of the property by the fire. This fire occurred on the morning of September 13, 1948. At that time Hattiesburg owned and operated four fire stations. No. 2 station was on the same side of appellant's track as the Bryant home. The other three stations were on opposite side of that track. The stations were located a distance of one mile to two miles from the Bryant house. The alarm is given all stations simultaneously. No. 1 station, called Central Station, was the nearest—about a mile. In addition to

the regular fire truck that station also operated what is called a "booster" truck. It is smaller than the regular truck. It is used for quick, emergency duty. It carries 340 gallons of water which can be discharged upon a fire immediately on arrival. The hose is ready for use. There is no need to attach it to a hydrant. The purpose of this emergency truck, and often the effect of its use, is to extinguish fires shortly after their origin, and before they have made too great headway, and while the hose of regular fire engines are being unwound and attached to fire hydrants. No other station had a booster truck. Central Station equipment, including this booster truck, was blocked at Market Street crossing for the time above indicated by the freight train of appellant standing upon the crossing. It is shown the fire was discovered right after its origin. Mrs. Bryant saw smoke coming from the kitchen and caused the fire alarm to be given. A neighbor saw it and turned in the alarm. He rushed to the Bryant home and endeavored, without success, to extinguish the fire by turning on the kitchen faucet and throwing water upon the fire with his hands. No. 2 truck was the first to arrive but the fire was too far gone to save any of the property. However, the jury under the evidence could have found, and presumably did, that, in view of the stage of the fire when first discovered and the time when the alarm was given, and the usual time required for the Central Station equipment to arrive at the scene, and the effective use of the booster truck, that, except for the delay at Market Street, the fire would have been extinguished without great loss, or even with very slight loss. It will be noted the verdict was for some twelve hundred dollars less than the amount for which suit was brought. Concededly, it is a difficult matter in cases of this character to establish causal connection between the negligence and the damage, and especially the extent of the damage resulting from such negligence, but we think these were questions for the jury

under the evidence in this case. See on this question, Terry v. New Orleans & Great Northern Ry. Co., 103 Miss. 679, 60 So. 729, 44 L. R. A., N. S., 1069; Magers v. Okolona, H. & C. C. R. Co., 174 Miss. 860, 165 So. 416.

Again, as bearing upon refusal to grant the peremptory, █ it is contended the Railroad did not know there was a fire, nor that it was holding up fire trucks. If such knowledge is essential to liability, which we do not decide, the evidence discloses, without contradiction, the train crew did have knowledge of both facts. Gray, the flagman on the caboose, and Terry, chief yard clerk, and Reed, agent and yardmaster, so testified. While the conductor did not testify, it is shown he was also on the caboose. The train was headed north. Two freight cars and the caboose were south of Market Street crossing. While the conductor did not testify, it is a justifiable conclusion he knew of the existence of the fire and of the blocking of the fire trucks, since Gray, the flagman, who was at the caboose, knew it. However, it was not necessary for the conductor or the engineer to have such knowledge in order to charge the master therewith. Such knowledge by a flagman, the yard clerk and the agent was the knowledge of the master in this tort action and under the issues here involved.

We are of the opinion the verdict of the jury upon liability and extent of the damage resulting therefrom is supported by sufficient evidence, and the trial judge correctly refused the peremptory instruction.

 █ Appellant next argues for reversal because of erroneous admission by the court of certain evidence on behalf of plaintiffs. We deem it necessary to take note of only one type of such evidence. The Bryant family had prepared a detailed list of the various articles of household furniture and furnishings and personal effects destroyed by the fire, placing values opposite such listed articles. This list had been given counsel for plaintiffs, who had caused the same to be copied and he attached

one such copy as an exhibit to the declaration. Miss Hall, a daughter of Mrs. Bryant by a former marriage, and Mrs. Bryant herself had a copy of this list before them as they testified on the stand to the destroyed articles and their values. Learned counsel objected to such use of the list. Mrs. Bryant had helped prepare the list. She stated that of her personal knowledge the list correctly set out the destroyed articles. The court sustained objection to her reading to the jury the various values shown on the list but permitted her to state to the jury her estimate of the values of the various articles. On cross-examination counsel went into detail as to the values of these articles, and the bases for such values. Mrs. Bryant gave her best judgment on the values. It is true that as to many of them her testimony is indefinite and uncertain but the weight of her evidence was for the jury. The court endeavored to confine her admissible testimony to her own knowledge aside from that shown on the list.

Miss Hall testified she knew what articles were destroyed. She said she was present and helped purchase much of the property and knew the purchase prices. She also helped pay for it originally, as well as replacements of much of that destroyed. She said she knew the market values of the articles. She had the list before her but the learned trial judge confined her admissible testimony to what she said she knew personally. Able counsel for defendant also subjected this witness to searching cross-examination as to her knowledge of the articles destroyed and the accuracy of her knowledge of the values thereof. We find no error in the use of this list in the method indicated.

As to other admitted evidence, of which complaint is made, the record reflects that diligent counsel for defendant made many objections to testimony, most of which were sustained by the court, and the testimony was not admitted until the questions were reformed to meet the objections and the evidence, in its nature, com-

plied with the requirements of admissible testimony. The trial court was cautious in admitting testimony offered by plaintiffs and liberal in sustaining objections thereto by defendant. We find no reversible error, if error at all, in the admission or exclusion of testimony.

██ ██ Plaintiffs obtained an instruction telling the jurors that ". . . the law in Mississippi prohibits a railroad company from stopping trains at a place where such railroad shall cross a highway or public street within the corporate limits of a municipality for a period of over five minutes . . .", etc. Appellant says the state statute, Section 7780, Code 1942, has no application to streets in a municipality. This Court so stated in Magers v. Okolona, H. & C. C. R. Co., 174 Miss. 860, 165 So. 416. However, the Court held that the blocking of the street in the manner shown in that case was negligence without the statute; also no city ordinance so prohibiting was introduced. The entire instruction in question leaves uncertain whether it bases liability entirely on the state statute or on a combination of the statute and the city ordinances. However, both municipal ordinances were invoked, the case was tried on the theory that negligence of defendant resulted from their violation and other instructions base such negligence on them. Under the circumstances, we do not think the jury could have been misled, and we cannot see that any prejudice resulted to defendant, especially when this instruction is considered in connection with the many others granted both plaintiffs and defendant.

Complaint is made as to other instructions granted plaintiffs. Some are merely mentioned. We have examined them in the light of their criticism by appellant, and, weighing all of the instructions together, we find no error in the action of the trial judge pertaining to instructions, other than the unreversible error in the instruction dealt with in the preceding paragraph of this opinion.

Appellant complains of remarks made by counsel for plaintiffs in his argument to the jury. The parties disagree as to just what the remarks were and there is no bill of exception disclosing them. Therefore we cannot consider them.

Affirmed.